1. The petition as here brought against a judgment debtor and other defendants, alleging that they entered into a conspiracy in bad faith to hinder, delay, or defraud the petitioner in the collection of her two judgments, and that in pursuance of such conspiracy various properties of the judgment debtor were secreted and fraudulent conveyances were made, with the result that the property of the judgment debtor in this State not so concealed or conveyed was insufficient to discharge the amount due under the two judgments, and seeking to set aside such fraudulent conveyances and the appointment of a receiver and other relief, stated a cause of action against the four defendants, who are plaintiffs in error in the bill of exceptions brought to this court, and the court did not err in overruling the general grounds of their demurrer. *Page 538 
2. The additional grounds of demurrer filed to the petition as finally amended are without merit.
 No. 15154. JUNE 8, 1945. REHEARING DENIED JULY 6, 1945.
 STATEMENT OF FACTS BY DUCKWORTH, JUSTICE.
Mrs. E. W. Allen filed on June 9, 1944, in the superior court of Fulton County an equitable petition against E. W. Allen, Mary B. Allen, Noah J. Stone, R. B. Pullen, J. Earle Smith, J. H. Geffken, W. E. DuPre, Magnolia Cemetery Incorporated, Peoples Loan Incorporated, John W. Grant, Jr., and Annie Inman Grant, individually and as trustees under the will of John W. Grant, and Peoples Loan Company, a corporation. The petition was several times amended by adding and striking allegations so voluminous that, to have a proper understanding of the rights sought to be asserted by the petitioner, it was first necessary to set out in extenso the allegations of the petition as finally amended, comprising in all about 58 pages. From a careful consideration of such a draft we think that it would serve no useful purpose to set forth here, in all of their amplifications, the manifold and detailed allegations, but that, for the purpose of testing the demurrers interposed, the following summary will suffice.
The petition as amended seeks to charge against the defendants a conspiracy to forestall the petitioner in the collection of certain money judgments or decrees of the superior court of Fulton County, and sets up various alleged wrongful acts in pursuance of such alleged conspiracy, seeks equitable relief as hereinafter mentioned, and the recovery of expenses of litigation in the sum of $10,000, and exemplary damages in the sum of $20,000. It was alleged that all of the defendants entered into the conspiracy in August, 1943, in bad faith to aid and assist E. W. Allen to hinder, delay, or defraud the petitioner in the collection of the said judgments or decrees, and that "the bad faith arises out of the actual intention of the defendants to hinder, delay, or defraud her as herein alleged, and by virtue of the said defendants joining in a conspiracy with the said intention to so hinder, delay, or defraud" the petitioner. On November 29, 1941, the petitioner filed in the superior court of Fulton County a suit (No. 136,606) against E. W. Allen, her then husband, to recover certain moneys from him as an implied *Page 539 
trustee. On February 4, 1944, she obtained a verdict and decree for $3917.78 principal with interest from November 24, 1917, $7184.86, making a total of $11,102.64, with future interest at seven per cent. per annum. A copy of the suit was attached to the petition in the present action. Subsequently, on September 11, 1944, the judgment was affirmed by this court. Allen v.Allen, 198 Ga. 269 (31 S.E.2d 483). On November 29, 1941, Mrs. Allen filed in the superior court of Fulton County a petition for a partial divorce (suit No. 136,607). During the pendency of the said cause, the court, on December 10, 1943, entered an order enjoining the defendant until further order of the court from disposing of or changing the custody or status of $23,000, which Allen had withdrawn from a savings deposit or credit with Peoples Loan Incorporated, and was concealing; and he was further enjoined from disposing of or changing the custody or status of other property listed in the divorce petition of Mrs. Allen, as follows: 482 shares of preferred stock and 542 shares of common stock of Peoples Loan Incorporated, of the fair market value for cash of at least $55,000; a printing business, individually owned by E. W. Allen, the E. W. Allen Printing Company, of a fair market value for cash of at least $7500; a one-half undivided interest in a 65-acre tract of land in DeKalb County, Georgia, known as the Simmons-estate property, said interest being of the fair market value for cash of $10,000; various and sundry properties, including real estate and personal property, which could not be itemized by the petitioner and the value of which was unknown to her. On May 5, 1944, the jury returned a verdict for partial divorce as prayed for, and awarded to her as alimony $5000 cash and in addition $200 per month during her lifetime, payable in $100 installments on the 1st and 15th of each month. On June 1, 1944, a decree was entered in conformity with the verdict, and the court also allowed $258.46 as expenses of litigation and $500 for attorney's fees.
E. W. Allen was, on May 9, 1944, the owner of 531 shares of preferred stock and 542 shares of voting common stock in Peoples Loan Incorporated. The total number of shares of preferred stock in said corporation was 1787 and the total number of common voting shares was 909, all being of the par value of $25 per share, and Allen being the owner of 40 per cent. of the entire stock. As a part of the preconceived scheme to prevent the petitioner from *Page 540 
collecting under her two aforesaid judgments or decrees, he, as such majority owner of stock, called a meeting of all the stockholders of Peoples Loan Incorporated for May 9, 1944. Present were E. W. Allen, president, representing his aforementioned shares of stock; W. E. DuPre, vice-president, secretary, and treasurer, representing 104 shares of common stock and 43 shares of preferred stock and 50 shares of preferred stock belonging to DuPre Manufacturing Company; J. Earle Smith, general manager, representing 2 shares of common stock and 7 shares of preferred stock; P. S. Etheridge, representing 40 shares of common stock; R. L. McConnell, trust officer of Trust Company of Georgia, representing 221 shares of common stock and 253 shares of preferred stock owned by the estate of John D. Simmons, deceased, which the Trust Company of Georgia was handling in a representative capacity; R. B. Pullen, the company lawyer; Norbert A. Dempsey, a security analyst of the Trust Company of Georgia, who accompanied the said McConnell. DuPre, a long-time friend and associate of E. W. Allen, derived his knowledge of the business and assets of the corporation largely from Allen and Smith. The said Etheridge had been for a number of years, before ascending to the bench of the superior court of Fulton County, the company's attorney, and his knowledge of the business and assets had been derived almost entirely from E. W. Allen. The said McConnell and Dempsey knew little of the business and assets except as reflected in financial statements of the corporation and relied on information given them by Allen. Allen, as majority stockholder, stated to the stockholders that the purpose of the meeting was to consider an offer to buy the assets of the corporation and to liquidate it, and that J. Earle Smith desired to make such an offer. Smith thereupon made a purported offer to purchase all the assets for $75,348, or $28 per share, and in addition agreed, pursuant to the conspiracy, to assume all outstanding liabilities of the corporation, which petitioner charges did not exceed $2000; and at that time the said Smith was not financially able to pay for said assets. Allen and Smith, pursuant to the conspiracy, represented to the stockholders that the offer was a fair price for the assets, whereas in truth and in fact the assets were worth at least $35,000 more on a fair market value for cash, a fact unknown to all present except Allen, Smith, and Pullen. These three failed to disclose this fact to the others, and *Page 541 
it was not otherwise known to them. These three were in a fiduciary and confidential relationship to the stockholders by virtue of the majority ownership of stock by Allen and the fact that they had acquired this information, which they knew the others did not know, and they were under the duty to disclose the true market value of the assets. Their failure to disclose such fact and the fraudulent representation by Allen and Smith that the offer was a fair one was a fraud on the stockholders and part and parcel of the preconceived scheme of the conspirators to acquire secretly and hold for Allen assets in the value of $35,000 above the said purchase-price. The other stockholders, relying on such representation, voted to accept the fraudulent offer of Smith. Allen also caused the matter of appointing a liquidating agent and the dissolution of the corporation to be brought up and considered by the stockholders; and Allen and Smith and the rest of the stockholders, relying on such representation, voted to appoint Smith as the liquidating agent and to dissolve the corporation.
The defendants J. Earle Smith "and/or" R. B. Pullen "and/or" J. H. Geffken, on May 9, 1944, took possession of all of the assets of the corporation under the guise of an alleged sale to J. Earle Smith. By reason of the assets being worth $35,000 more than the offer, and the alleged ownership by Allen of 40 per cent. of the stock of the corporation, and the alleged excess being held secretly for him, he profited in the amount of $21,000 as to such "undistributed portion," the other 60 per cent. or $24,000 belonging to the other stockholders, who would be entitled to intervene and set up their claims thereto. If they do not do so, such value and amount of $24,000 would inure to the benefit of Allen. Smith acquired as liquidating agent the assets of the corporation consisting of cash, notes receivable, and 29 shares of stock in Magnolia Cemetery, a corporation, the other shares of which, being 32 shares, were owned by E. W. Allen. Smith as liquidating agent gave Allen a check for $30,044 as his share of the purchase-price of the assets, and Allen endorsed in blank his stock in Peoples Loan Incorporated, and delivered it to Smith. Smith has settled with the other stockholders, paying $28 per share, except as to 307 shares of preferred stock in Peoples Loan Incorporated. On May 18, 1944, pursuant to a petition by E. W. Allen, R. B. Pullen, and J. Earle Smith, the superior court of Fulton County passed an order dissolving *Page 542 
the said Peoples Loan Incorporated. On May 18, 1944, the defendants J. Earle Smith, R. B. Pullen, and J. H. Geffken obtained a charter for a corporation, Peoples Loan Company, for the purpose of transferring or causing to be transferred to the same a substantial portion of the assets of Peoples Loan Incorporated, of the value of $35,000, the "undistributed portion" hereinbefore referred to. This corporation is now in possession of said assets and claims title thereto by virtue of a transfer to it by Smith, Pullen, and Geffken. The petitioner charges upon information and belief that each of the acts of Smith, Pullen, and Geffken, hereinbefore set out, was parcel and part of the conspiracy entered into with Allen to hinder, delay, or defraud the petitioner in the collection of her judgments or decrees against E. W. Allen. With respect to the undistributed portion of the assets, the conspiracy was only another step in the scheme of Allen, whose wealth at the commencement of this litigation exceeded $100,000 cash or properties of cash market value, to conceal his ownership of substantially all properties owned by him within this State, to abscond to parts unknown with the major part of his wealth, and to drive a settlement bargain with the petitioner on terms dictated through his said conspirators who remain in the State.
At the time the said defendants took said alleged transfer of the assets of Peoples Loan Incorporated, they well knew of the injunction against E. W. Allen, enjoining him from changing the status of and disposing of any of his assets, and knew of the intention of Allen to hinder, delay, or defraud the petitioner in the collection of her said judgments or decrees. In taking the transfer in his own name, J. Earle Smith was in fact acting for and in behalf of each of the conspirators. Peoples Loan Company was organized by the conspirators for the purpose of hindering, delaying, or defrauding the petitioner in the collection of said judgments or decrees and protecting the secret ownership of Allen in the undistributed portion of the assets of Peoples Loan Incorporated. The defendant Allen caused the defendants Smith, Pullen, and Geffken to agree to subscribe for the entire voting capital stock in Peoples Loan Company, and caused $4808.90 and $5000 to be paid into the corporation in the names of the defendants Pullen and Geffken, respectively. It was part of the conspiracy that Pullen, Smith, and Geffken organize that corporation with the common *Page 543 
voting stock to be held ostensibly in the names of Smith, Pullen, and Geffken; and, in subscribing for and holding said common voting stock, Pullen, Smith, and Geffken were acting to give to the transaction a color of regularity in order to further conceal the secret ownership of Allen in said undistributed portion of the assets. The defendant Allen caused the said Smith, Pullen, and Geffken to employ another attorney to represent Peoples Loan Company, and paid him a fee for representing the said parties on the record while Pullen represented himself on the record.
The petitioner alleges upon information and belief that J. Earle Smith has delivered or is about to deliver to E. W. Allen through the alleged dissolution device the sum of approximately $30,000, that the said J. Earle Smith now has on deposit with the First National Bank of Atlanta and in his possession additional assets of Peoples Loan Incorporated, which he is rapidly dissipating and has dissipated to himself, Pullen, Geffken, and others pursuant to said plan and scheme. Some of the assets have been transferred to Peoples Loan Company, and its officers and stockholders have aided and abetted the said plan and scheme by taking part therein, and have possession and title to some of the assets. The said plan and scheme of dissolution of Peoples Loan Incorporated, is charged to be a plan and scheme of the defendants E. W. Allen, J. Earle Smith, R. B. Pullen, J. H. Geffken, Peoples Loan Incorporated, and Peoples Loan Company, in an effort to avoid the court order of December 10, 1943, hereinbefore set out, in the collection of the petitioner's judgments or decrees. Peoples Loan Incorporated took part in the said plan and scheme through its officers, board of directors, and majority voting stockholder, who was E. W. Allen. Peoples Loan Company took part therein through its officers, board of directors, and stockholders, to wit, R. B. Pullen, J. Earle Smith, and J. H. Geffken, by receiving various assets of Peoples Loan Incorporated with knowledge of the said plan and scheme, converting the same to its own use; and by ratifying the plans, acts, and conduct of Peoples Loan Incorporated, E. W. Allen, R. B. Pullen, J. H. Geffken, and J. Earle Smith, in going through an alleged dissolution of Peoples Loan Incorporated, and incorporating Peoples Loan Company for the purpose of taking over the business and assets of Peoples Loan Incorporated, including employees, location, and good will. J. Earle Smith had on deposit *Page 544 
with First National Bank of Atlanta approximately $61,500 cash in an account known as J. Earle Smith, liquidating agent for Peoples Loan Incorporated, and from this account he paid out $28 per share to stockholders of Peoples Loan Incorporated, except as to 307 shares of preferred stock. He paid out at least $5000 to himself. The notes receivable of Peoples Loan Incorporated, and its other assets, consisting of its shares in Magnolia Cemetery Incorporated, and all notes receivable thereof, were turned over by Smith to Peoples Loan Company, and from said assets the defendant was on June 29, 1944, paying himself and his assistant a salary, and was paying the expenses of Peoples Loan Company and Magnolia Cemetery Incorporated. The expenses of operating Peoples Loan Company exceeded the amount of income of that corporation, and thereby the defendant Smith was dissipating the said assets. The money of Peoples Loan Company was used to finance Magnolia Cemetery Incorporated; and the money of Magnolia Cemetery Incorporated, was used to finance Peoples Loan Company. There was a mingling of moneys of the various parties and corporations, so that it was difficult and at times practically impossible to distinguish the ownership thereof or to trace the same. Unless the assets of Peoples Loan Incorporated be taken into possession by the receiver herein appointed, the petitioner is without adequate remedy at law, because the same are in cash and assignable choses in action; and on information and belief the petitioner alleges that the said E. W. Allen, absconds, and neither Pullen, Geffken, nor Smith is able to respond in damages. By reason of the acts of the said E. W. Allen, Peoples Loan Incorporated, R. B. Pullen, J. Earle Smith, and Peoples Loan Company, as herein complained of, the assets of E. W. Allen, Magnolia Cemetery, and Peoples Loan Company have become mingled and confused so as to make identification difficult, and without the same being taken over by a receiver the petitioner will be without substantial relief.
The defendant E. W. Allen transferred his 32 shares of stock in Magnolia Cemetery Incorporated to the defendant Mary B. Allen at a time unknown to the petitioner, but charged to be during the pendency of the said suits filed by the petitioner in Fulton superior court. The said transfer was made by Allen with the intention of hindering, delaying, and defrauding the petitioner's rights as *Page 545 
said judgment creditor and as said alimony claimant, and was made to the defendant Mary B. Allen without any consideration. It was part and parcel of his scheme to avoid payment of any claim by the petitioner under either judgment or decree, the said plan and scheme being to divest himself of all properties owned by him and to liquidate all assets held by him and to thereafter abscond to parts unknown. The effect of said plan and scheme was to render him insolvent and without sufficient assets within the jurisdiction of the court with which to pay said claims.
The defendants Peoples Loan Incorporated and Peoples Loan Company are jointly and severally, along with the defendants E. W. Allen, Mary B. Allen, R. B. Pullen, J. Earle Smith, and J. H. Geffken, liable to the petitioner for expenses of litigation in the sum of $10,000 and punitive damages in the sum of $20,000, in that they have acted in bad faith towards the petitioner in aiding and assisting the defendant E. W. Allen to hinder, delay, and defraud the petitioner in the collection of the said judgments and decrees.
The said dissolution of Peoples Loan Incorporated, the said alleged sale of its assets to the defendant J. Earle Smith, and the subsequent transfer of the assets to Peoples Loan Company, and the incorporation of Peoples Loan Company were executed by the defendants Smith, Pullen, and Geffken with knowledge of the said order of December 10, 1943, enjoining the defendant E. W. Allen from transferring his stock in Peoples Loan Incorporated, with knowledge of the decree of court dated February 4, 1944, and with knowledge of the verdict for partial divorce and alimony dated May 5, 1944. They aided and abetted the defendant Allen in said plan and scheme to defraud the petitioner as alleged by assisting in and procuring the undistributed portion of the assets of Peoples Loan Incorporated, and concealing the interest of E. W. Allen as hereinbefore alleged.
The defendants Stone and Pullen have filed a claim of lien against the following property of E. W. Allen, and the same has been recorded in book 1466, page 505, of the chattel-lien books of the superior court of Fulton County: (Listing certain printing press equipment and machinery, tools, etc.) The said claim of lien is not in any amount whatsoever, and was filed by the said Stone and Pullen with knowledge of the decree in suit No. 136,606 *Page 546 
and of the verdict in suit No. 136,607. They have filed a claim of lien with no amount specified, for services as attorneys for E. W. Allen in said suits, and have recorded the said claim in book 1644, page 479, of the records of the clerk of the superior court of Fulton County upon the following described real estate: (Listing described land in the 14th district of Fulton County, Georgia, being lot 134.) They have filed a claim of lien with no amount specified as attorneys for E. W. Allen in said suits, and have recorded the same in book 171, page 492, of the records of the clerk of the superior court of DeKalb County against the following described real estate: (Described land in 18th district of originally Henry now DeKalb County, Georgia, being lots 158 and 159.) The petitioner charges on information and belief that the said claims of lien are invalid and not bona fide, in that (1) the services rendered had not been completed at the time they were filed; (2) on the further ground that the said Pullen and Stone have been paid in full for all services rendered; and (3) on the further ground that the services rendered were not given in defense in suits for the recovery of specific property. If they have a valid and bona fide claim of lien against the defendant Allen, which the petitioner expressly denies, the same should be set up herein. The petitioner does not seek relief to enjoin the said two defendants from proceeding with the said claims of lien by further suit or otherwise against the defendant Allen, but expressly requests that the said assets against which the claims have been filed be placed in the hands of the receiver appointed herein, and asks that upon a trial the said claims of lien be canceled of record.
The defendant is the owner of various printing machines and presses and other equipment used in a printing company, which are located in the offices of the E. W. Allen Printing Company on Alabama Street, City of Atlanta, Fulton County, Georgia, and within the jurisdiction of this court, but not of sufficient value to pay the said judgments or decrees or either of them. The petitioner caused a fi. fa. to be issued against the defendant, but the sheriff of Fulton County was unable to gain entrance for the purpose of levying on the said property because the premises were unoccupied and locked so that no one could get in. The defendants John W. Grant Jr. and Annie Inman Grant, as trustees under *Page 547 
the will of John W. Grant, are the landlords of the said premises and have refused to unlock the said premises so as to permit the sheriff to enter and make a levy therein. The defendant Pullen has a key to the premises, but refused to permit the sheriff to enter for the purpose of making a levy.
The defendant Allen owns a lot in East Point, Fulton County, Georgia, of a value unknown to the petitioner but charged to be of a market value for cash of approximately $200. The petitioner is unable to aver whether or not the defendant has made a transfer of the said lot, but none appears of record in the office of the clerk of this court.
The defendant Allen is the owner of a one-half undivided interest in the following described real estate in DeKalb County: (Describing real estate in 18th district of originally Henry now DeKalb County, Georgia, being lots 158 and 159.) He has made an alleged loan deed to secure an alleged indebtedness of $8000 to the defendant Mary B. Allen on said half interest in real estate in DeKalb County, Georgia, which petitioner charges was part of his plan and scheme to hinder, delay, and defraud the petitioner in the collection of the said verdicts and judgments against him. The said transfer purported to be dated August 26, 1943, and was recorded May 20, 1944, in the records of the clerk of the superior court of DeKalb County. The petitioner avers that there was no debt of $8000, and there was no consideration for the said loan deed and no delivery of the deed until after May 20, 1944. The defendant Pullen assisted in the consummation of the transfer of the said loan deed to Mary B. Allen, who is a sister of the defendant E. W. Allen.
The said printing machinery and equipment, the East Point lot, and the half interest in the DeKalb County real estate are not sufficient in market value to pay the said decrees against the defendant in behalf of the petitioner, and it will be necessary, in order to obtain sufficient assets, to have a receiver appointed to collect and reduce the other assets herein described to cash and to preserve the same pending the outcome of this litigation because the defendant Allen has concealed all of his other assets.
Each of the defendants Mary B. Allen, R. B. Pullen, J. Earle Smith, J. H. Geffken, Peoples Loan Incorporated, and Peoples Loan Company conspired with the defendant E. W. Allen and *Page 548 
among themselves as hereinbefore pleaded in the making of the said conveyances and concealments with the actual intention to hinder, delay, or defraud the petitioner, not only with respect to the said parts of the judgments which were past due and unpaid at the time of the filing of the original petition herein, but also with respect to the payment or collection of the future installments of alimony provided for in the verdict and decree hereinbefore described and also the judgment or decree in the said suit No. 136,606. At the time the original petition was filed, the alimony decree was past due and unpaid in the amounts of $5000 principal, $500 attorney's fees, $258.46 expenses of litigation, and the $100 installments of alimony due on May 15, 1944, and June 1, 1944, respectively. The printing-plant machinery and equipment had a fair market value for cash of approximately $3500, and was encumbered with the alleged claim of lien in favor of the defendants Stone and Pullen in the sum of $5000. The East Point real estate had a fair market value for cash of approximately $225, but was also encumbered with the alleged claim of lien of the defendants Stone and Allen.
The defendants Stone and Pullen, in making and filing the claims of lien hereinbefore described, were acting in conspiracy with E. W. Allen with the actual intention of hindering, delaying, or defrauding the petitioner with respect to, not only the said judgments of the petitioner in so far as any part thereof was past due and unpaid, but also in the collection of or the payment of the future installments of alimony provided for in the verdict and decree in suit No. 136,606, by so encumbering the said printing-plant machinery and equipment, the East Point real estate, and the DeKalb County real estate.
The defendant E. W. Allen is now within the jurisdiction of this court. He is in contempt of court for failing to pay the alimony due the petitioner, and has been apprehended and arrested under order of court and is in jail. Since August, 1943, commencing with the conversion of $23,000 from a savings deposit in Peoples Loan Incorporated into cash and its immediate and continued concealment, it has been and is the plan of Allen and his alleged conspirators and fraudulent grantees as herein set forth to conceal part of his properties by making the fraudulent conveyances mentioned and conceal the balance of his assets by converting the *Page 549 
same into cash moneys or the equivalent so they could not be found or caused to be used in payment of the judgments described herein through the ordinary legal processes of the court, and as a consequence the petitioner has been forced to call on the extraordinary powers of a court of equity to obtain adequate relief. On May 9 and 10, 1944, Allen had in his custody, control, and possession within the jurisdiction of this court approximately $70,000 cash or its equivalent, into which he had converted his assets for the purpose of absconding with the same and concealing it to avoid payment of the judgments herein described, and for the purpose of hindering, delaying, or defrauding the petitioner in the collection of said judgments and particularly the future installments of alimony. In furtherance of the said scheme of Allen and his alleged conspirators, this defendant, it is alleged on information and belief, actually left the State of Georgia on or about May 10, 1944. Since that time he concealed himself until discovered on August 12, 1944, when he sneaked into this jurisdiction in an adjoining county to confer covertly with one of his alleged conspirators. When he was discovered he was, through the efforts of the petitioner's attorneys, ordered by the court to be arrested and placed in jail under a ne exeat bond. He now has in his possession, custody, or control the said moneys or the equivalent, and continues to conceal the same, refusing to disclose the whereabouts of the same or to deliver the same to the court's receiver, as demanded, and as required under an order of court of August 16, 1944. The petitioner charges upon information and belief that when he left the State of Georgia he had in his possession, custody, or control the stock certificate for 32 shares of common stock in Magnolia Cemetery Incorporated, standing in the name of Mary B. Allen as hereinbefore described, and now has the same in his possession, custody, or control and conceals the same. The said money or the equivalent can not be reached by legal process, and the petitioner has an equitable lien thereon, which she is entitled to perfect by attachment in equity, and which can not be done except by seizure by the receiver appointed by the court in this case. If he should be discharged without being required to turn over the moneys or the equivalent within his possession, custody, or control, he will again abscond and conceal himself and the said moneys or the equivalent, and it will be *Page 550 
impossible for the petitioner ever to perfect her equitable lien thereon and she will suffer irreparable injury.
Waiving discovery, the petitioner prayed:
That the petition be filed for the benefit of the petitioner and any other creditors of the defendant E. W. Allen.
That process issue.
That a receiver, both temporary and permanent, be appointed for the defendant E. W. Allen, and be directed to take possession of any and all assets of the defendant E. W. Allen which can be reduced to possession.
That the defendant Magnolia Cemetery Incorporated be enjoined from transferring any stock therein on the books of the corporation, pending this litigation and until the further order of the court, in behalf of E. W. Allen, Mary B. Allen, Peoples Loan Incorporated, or Peoples Loan Company, or any transferee of them.
That Peoples Loan Incorporated and the officers thereof be enjoined from continuing with the dissolution of that corporation, and from taking any orders dissolving the corporation, and be enjoined from further permitting the advertisements now pending in the Fulton county Daily Report with reference to the said dissolution.
That the transfer of the said thirty-two shares of stock in Magnolia Cemetery Incorporated by the defendant E. W. Allen to the defendant Mary B. Allen be set aside as null and void.
That the receiver be directed to take possession of the said thirty-two shares of common stock and administer the same herein as the property of the defendant E. W. Allen.
That the defendant Mary B. Allen be enjoined from transferring said thirty-two shares of common stock to any person whatsoever or for any purpose whatsoever except to the receiver appointed herein, and that she be directed to deliver the same immediately to the said receiver.
That the defendant Mary B. Allen account for any dividends or profits from the said thirty-two shares of common stock.
That the said thirty-two shares of common stock issued in the name of Mary B. Allen on the books of Magnolia Cemetery Incorporated be canceled by order of the court.
That Magnolia Cemetery Incorporated cause a certificate of thirty-two shares to be issued in the name of the defendant E. W. *Page 551 
Allen, and possession of the same be delivered over to the receiver herein.
That the said transfer from the defendant E. W. Allen to Mary B. Allen of the said one-half undivided interest in the said real estate in DeKalb County be declared null and void, and the said half interest be delivered into the possession of the receiver appointed herein for the purpose of administering the same, and the deed to Mary B. Allen be canceled.
That the defendants R. B. Pullen "and/or" J. Earle Smith "and/or" J. H. Geffken be enjoined from disposing of any and all capital stock claimed by them or any of them in Peoples Loan Incorporated "and/or" Peoples Loan Company or the proceeds therefrom; and that they hold any of the said stock acquired from E. W. Allen, which may now stand in their names or be claimed by them, in trust for the petitioner for the purpose of satisfying her said judgments or decrees, and for the purpose of satisfying the said alimony payments, at the rate of $200 per month, which are not as yet past due.
That the defendants R. B. Pullen "and/or" J. Earle Smith "and/or" J. H. Geffken be required to deliver over to the possession of the receiver in this case any and all capital stock in Peoples Loan Incorporated acquired by them from the defendant E. W. Allen, and also any stock in Peoples Loan Company into which the same has been converted.
That any and all assets impounded herein be administered for the benefit of the petitioner and any and all other creditors of the defendant E. W. Allen in accordance with rank and priority as may be established by law.
That any and all other creditors of E. W. Allen be permitted to intervene.
That the receiver be directed to take possession of the assets of Magnolia Cemetery Incorporated, and administer and sell the same so as to reduce the assets of the said corporation to cash, and to apply thirty-two sixty-firsts of the net assets thereof to the claims of the petitioner herein set out.
That the officers of Peoples Loan Incorporated and Peoples Loan Company be enjoined from further transferring any of the assets of Peoples Loan Incorporated to Peoples Loan Company until further order of the court. *Page 552 
That Peoples Loan Company be enjoined from transferring any stock standing in the name of R. B. Pullen, J. Earle Smith, or J. H. Geffken on the books of the said company until the further order of the court.
That Peoples Loan Company be enjoined from transferring any stock on its books and from negotiating, accepting, or taking any further transfers of assets from Peoples Loan Incorporated to it until the further order of the court.
That the defendants John W. Grant Jr. and Annie Inman Grant, as said trustees, and the defendant Pullen be required to permit the receiver appointed herein to take possession of and administer the assets of the defendant used in connection with E. W. Allen Printing Company by unlocking the premises and permitting the said receiver to take possession, and that the petitioner have such other relief as may be needed to facilitate the administration of the said assets.
That E. W. Allen be attached for and adjudged in contempt of court both civil and criminal.
That a lis pendens be filed both here and in DeKalb County against the real estate described herein.
That the receiver appointed herein take charge of, manage, and control all assets of Magnolia Cemetery Incorporated.
That the defendants R. B. Pullen, J. Earle Smith, and J. H. Geffken or each of them be enjoined from transferring any stock standing in the name of any one of them on the books of either Peoples Loan Incorporated, or Peoples Loan Company.
That the claims of lien filed in behalf of Noah J. Stone and R. B. Pullen against the defendant E. W. Allen be canceled of record.
That the court trace all assets of every kind of the said E. W. Allen into whatever person, firm, or corporation the same have been transferred since November 29, 1941, and administer the same by receiver herein for the use and benefit of the petitioner and all other creditors of the said E. W. Allen.
That Peoples Loan Incorporated and any officer thereof and any defendant named in the petition be enjoined from disposing of in any manner whatsoever any and all assets or property of Peoples Loan Incorporated.
That Peoples Loan Company and any officer thereof and any *Page 553 
defendant in the original petition be enjoined from disposing of in any manner whatsoever any assets or property transferred to it or now owned by it or in its custody or possession, which said property or assets formerly belonged to Peoples Loan Incorporated, or E. W. Allen or were transferred to Peoples Loan Company by Peoples Loan Incorporated, its assets and records.
That a receiver be appointed for Peoples Loan Incorporated, its assets and records, for the purpose of tracing and taking possession of those parts of the assets of Peoples Loan Company which were transferred to it by Peoples Loan Incorporated.
That J. Earle Smith be enjoined from making any further distributions as liquidating agent or otherwise for Peoples Loan Incorporated, or others from assets formerly held by E. W. Allen or Peoples Loan Incorporated, or on account of the said alleged dissolution arrangement, directly or indirectly; and that he be directed to turn over all sums and property and records of which he has custody or possession as said liquidating agent or which formerly belonged to E. W. Allen or Peoples Loan Incorporated, to the receiver herein appointed.
That each of the alleged corporate defendants and the officers and the employees thereof be enjoined from transferring or changing the status of any capital stock in such corporation or recognizing or accepting notice of the transfer thereof or issuing additional stock or stock certificate or certificates to any person or persons whatsoever or for any reason.
That the receiver be given access to the books and records of the defendants herein, and the defendants be enjoined from interfering with the said access to the books and records.
That the petitioner have judgment against Peoples Loan Incorporated and Peoples Loan Company, jointly and severally, along with E. W. Allen, Mary B. Allen, R. B. Pullen, J. Earle Smith, and J. H. Geffken, for expenses of litigation in the sum of $10,000.
That the petitioner have judgment against Peoples Loan Incorporated and Peoples Loan Company, jointly and severally, along with E. W. Allen, Mary B. Allen, R. B. Pullen, J. Earle Smith, and J. H. Geffken, in the sum of $20,000 as punitive damages.
That all of the defendants be enjoined from changing the status of any of the properties or records of Peoples Loan Incorporated, *Page 554 
E. W. Allen, Peoples Loan Company, Magnolia Cemetery Incorporated, or any transferee or assignee of any or either of them except as expressly ordered by the court.
That a writ of ne exeat issue against the defendant E. W. Allen.
That E. W. Allen, R. B. Pullen, J. Earle Smith, J. H. Geffken, Peoples Loan Incorporated, Peoples Loan Company, and Mary B. Allen be adjudged in contempt of court for violating the order of court dated December 10, 1943, described in the petition, wherein E. W. Allen was enjoined from "in any manner further disposing of or changing the custody or status of any other property listed in the divorce petition in this case [suit No. 136,607]."
That the conveyances heretofore prayed to be set aside as fraudulent as against the petitioner be set aside, not only for the purpose of paying the judgment and decree in suit No. 186,606 and that part of the decree in suit No. 136,607 which was past due and unpaid according to its terms at the time of filing the original petition herein, but that they be set aside also for the purpose of causing the funds to be realized from the sale thereof to be used as security for the payment of the future installments of alimony described in the decree in suit No. 136,607, in such an amount and upon such terms as the court and jury in this case may deem fair and equitable.
That the judgment lien of the petitioner be imposed on the property alleged to have been fraudulently conveyed and fraudulently concealed, not only with respect to all past-due and unpaid portions of the decrees in suits Nos. 136,606 and 136,607, but also there be imposed on such properties or moneys an equitable lien for the purpose of securing the payment of all future installments of alimony provided for in the decree in suit No. 136,607 and when each of the said installments shall become due in accordance with the terms of the said decree; that the court and jury in this case determine a fair and reasonable amount of the properties or moneys herein impounded to be held by the receiver or by this court to secure the payment of the said future installments of alimony as and when they shall become due in accordance with the terms of the said alimony decree; and that the defendants be required to pay into this court out of the funds herein impounded a sum equal to the amount found by the court and jury herein to *Page 555 
be a fair sum to be held in accordance with the direction of the court as security for the said future payments of alimony.
And for such other and further relief as the court might deem meet and proper.
The original petition was several times amended. To the petition as amended on June 29, 1944, Peoples Loan Company, J. Earle Smith, and J. H. Geffken demurred on the grounds, all of which were denominated general, that (1) no cause of action was set forth against them; (2) there is no equity alleged against them; (3) if the petitioner has any remedy against them, she has an adequate remedy at law; (4) it is not alleged that the defendant E. W. Allen is insolvent; (5) the petition is multifarious; (6) there is a misjoinder and nonjoinder of parties and causes of action. There were other grounds not necessary to be mentioned here. The court, on July 26, 1944, overruled all grounds except some relating to designated paragraphs of the petition, and leave was given the petitioner to amend within twenty days to cure the defects pointed out, upon the failure to comply with which direction the portions objected to, as well as related portions, would stand stricken, and one paragraph was stricken in its entirety. Proper amendments were filed within the time required.
R. B. Pullen demurred on July 7, 1944, to the petition as amended on June 29, 1944, on the same grounds as urged by the three aforementioned defendants, and on an additional special ground not necessary to be mentioned here. The court, on July 26, 1944, overruled all grounds of demurrer.
To the petition as amended on August 10, 1944, Peoples Loan Company, J. Earle Smith, and J. H. Geffken demurred, renewing the same grounds previously urged as general and specified above, and also renewed other designated grounds of demurrer, and added certain special grounds. The court, on January 12, 1945, overruled all grounds of demurrer.
On September 2, 1944, R. B. Pullen demurred to the petition as amended August 10, 1944, renewing the grounds theretofore urged by him and specified above, and adding one special ground not necessary to be mentioned here. The court, on January 12, 1945, overruled all grounds of demurrer.
On December 19, 1944, Peoples Loan Company, J. Earle Smith, J. H. Geffken, and R. B. Pullen demurred to the petition as *Page 556 
amended August 14, 1944, and September 25, 1944, renewing the grounds previously urged and specified above, designating them as general; and on January 12, 1945, the court overruled all grounds of demurrer.
On January 8, 1945, Peoples Loan Company, J. Earle Smith, J. H. Geffken, and R. B. Pullen jointly demurred to the petition as amended January 2, 1945, renewing the grounds previously urged, denominated as general and specified above, and added new grounds numbered 8 to 18, inclusive, hereinafter referred to. The court, on January 12, 1945, overruled all grounds of demurrer.
On January 19, 1945, the court reviewed its rulings on the demurrers filed by Peoples Loan Company, J. Earle Smith, and J. H. Geffken on July 6, 1944, and by R. B. Pullen on July 7, 1944, to the petition as amended June 29, 1944, and again overruled all grounds of the demurrers.
In the bill of exceptions, filed on January 31, 1945, the said four defendants assign error on the judgments of January 12, 1945, and January 19, 1945, overruling the grounds of demurrer as above mentioned.
1. The trial court was without jurisdiction, at a subsequent term on January 19, 1945, to review its rulings of July 26, 1944, on the demurrers filed by the defendants on July 6, 1944, and July 7, 1944. No jurisdiction was reserved to consider the rulings made, and in the absence of a timely exception the rulings became the law of the case. As held in Miralgia v. Bryson, 152 Ga. 828 (2) (111 S.E. 655), subject to the exceptions therein stated and not here involved, "The general principle obtains that a court can not set aside or alter its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was begun during the term." See also Rogers v. Rigell, 183 Ga. 455
(188 S.E. 704); Crowell v. Crowell, 191 Ga. 36 (11 S.E.2d 190). To have modified or altered the original judgment would have required a reversal by this court upon proper assignment of error by the petitioner, and, accordingly, the judgment of the trial court in again overruling the demurrers is affirmed. There remains for consideration, therefore, *Page 557 
only the judgment of January 12, 1945, on which error is properly assigned.
After the amendment of January 2, 1945, the said four defendants renewed grounds of demurrer, but specifically limited the renewal as follows: "The defendants renew all of the grounds of their original demurrers to the plaintiff's petition as thus amended, to wit:" (Naming the same six grounds hereinbefore mentioned and designated as general by the demurrants.) The demurrer added new grounds numbered 8 to 18, inclusive. Of the six so-called general grounds, those demurring because of alleged multifariousness and misjoinder and nonjoinder of parties and causes of action are not general but are special grounds, and are without merit for the reason that, as required by law, they fail to point out wherein the petition as amended is defective in the particulars urged. The only general grounds remaining for consideration by this court are: (1) No cause of action is set forth against the demurrants; (2) There is no equity alleged against them; (3) If the petitioner has any remedy against them, she has an adequate remedy at law; (4) It is not alleged that the defendant E. W. Allen is insolvent. Counsel for the demurrants insists that while the demurrers list the "general grounds" which they renew, general grounds not listed should also be considered by this court because the demurrants might merely have stated that they renewed all general grounds of their previous demurrers. While it is true that such a recital would have brought under review all general grounds so renewed, the language of the renewed demurrers can not be broadened beyond the express limitation.
Besides those named, no grounds, whether special or general, urged before the last amendment of January 2, 1945, are renewed, and therefore must be considered as abandoned and moot. Howard
v. Allgood, 143 Ga. 550 (1 a) (85 S.E. 757); Livingston v.Barnett, 193 Ga. 640 (1 a) (19 S.E.2d 385). It follows from the above that, besides the four-mentioned general grounds, the only other grounds entitled to consideration are those added by the last renewed demurrer of January 2, 1945, being grounds 8 to 18, inclusive, and hereinafter referred to.
A conspiracy is defined as "the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, *Page 558 
by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." 1 Eddy on Combinations, § 171; Horton v.Johnson, 192 Ga. 338, 346 (15 S.E.2d 605). The conspiracy is not the gravamen of the charge, but may be both pleaded and proved as aggravating the wrong complained of and enabling the petitioner to recover in one action against all as joint tort-feasors. National Bank of Savannah v. Evans, 149 Ga. 67
(99 S.E. 123); Bentley v. Barlow, 178 Ga. 618
(173 S.E. 707). "So far as the conspiracy is concerned, no further specification is required than the general terms in which it is pleaded in the declaration; and this is true although the jurisdiction of the court to render judgment against one or more of the defendants depends upon allegations and proof of conspiracy." National Bank of Savannah v. Evans, supra;Walker v. Grand International Engineers, 186 Ga. 811, 820
(199 S.E. 146). The allegations of the petition as amended set forth a conspiracy against named defendants to aid and abet E. W. Allen to forestall the petitioner in the collection of the two judgments described in the petition as amended, and accordingly any act done by one of the conspirators is chargeable to all of them. Wall v. Wall, 176 Ga. 757 (4) (168 S.E. 893);Grant v. Hart, 192 Ga. 153, 156 (5) (14 S.E.2d 860). The liability is joint and several. Smith v. Manning, 155 Ga. 209
(2) (116 S.E. 813); Wall v. Wall, supra.
Of the named defendants only Peoples Loan Company, a corporation, J. H. Geffken, J. Earle Smith, and R. B. Pullen are plaintiffs in error here. It is strongly insisted by them that whatever was done by them or participated in with respect to the sale of the assets of Peoples Loan Incorporated, its dissolution, the transfer by J. Earle Smith, the purchaser, of the "undistributed portion" of the assets to Peoples Loan Company, and the formation of that corporation is not shown to have been otherwise than the exercise of lawful rights. Nevertheless, it is charged by the petitioner that all of these entered into a conspiracy with E. W. Allen to hinder or delay her in the collection of her two judgments, and that all of the alleged acts were in pursuance of that conspiracy. While it is alleged that the original conspiracy was formed in August, 1943, and Peoples Loan Company is not shown to have been incorporated until May 18, 1944, its entrance into the conspiracy *Page 559 
after its inception would equally bind it as to any wrongful act done by any one of the conspirators in pursuance of the general design to oppress the petitioner, notwithstanding that the acts might in and of themselves have been ordinarily lawful, since, as hereinbefore defined, a conspiracy is not only a combination of two or more persons to do something that is "unlawful, oppressive, or immoral," but is also a combination to do something that is "not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." Hence, the contention that the defendants, who are plaintiffs in error here, are not charged with participating in an illegal conspiracy is without merit.
"The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz: . . Every conveyance of real or personal estate, by writing or otherwise, wise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." Code, § 28-201 (2). As was said in Burkhalter v.Glennville Bank, 184 Ga. 147, 153 (190 S.E. 644): "A conveyance of property for a present valuable consideration may be void as to creditors under this section, and a deed to secure a debt is as much open to attack for fraud as an absolute conveyance." It is charged not only that the conveyance by E. W. Allen was in pursuance of the conspiracy, but that Mary B. Allen was a party to the conspiracy. Hence, she necessarily knew of his intention to delay and defraud the petitioner by this method or at least had ground for reasonable suspicion. See Cunningham v.Avakian, 192 Ga. 391, 394 (15 S.E.2d 493). Moreover, it is charged that the conveyance was without consideration, and "a voluntary deed is void as to creditors, though the grantor be not insolvent at the time of making the deed, if his purpose in so doing was to hinder, delay, or defraud creditors; and this would be true whether the donee knew of the fraudulent intention or not." May v. Leverett, 167 Ga. 205 (144 S.E. 778). See also Citizens Southern Nat. Bank v. Kontz, 185 Ga. 131,147 (194 S.E. 536). The loan deed to Mary B. Allen was subject, therefore, to be set aside after notice to the nonresident by publication as provided by the Code, § 81-205 (2), and as prayed here. *Page 560 
On the same principle the transfer of the 32 shares of stock in Magnolia Cemetery Incorporated to Mary B. Allen may be set aside by a court of equity. "The fact that the value of the property covered by several conveyances was largely in excess of the amount of the debt due petitioner did not afford ground for demurrer. All of these conveyances, having, according to the allegations of the petition, been executed in pursuance of a common scheme, could be attacked without reference to the amount of the judgment creditor's debt as compared to the value of the property conveyed in the several deeds." Cowan v. Nicholson,158 Ga. 425, 428 (123 S.E. 681). As to the claims of liens for attorneys' fees filed by R. B. Pullen and Noah J. Stone, the petition sets out a copy of the same, showing that they were based on alleged services in the two suits in which the petitioner obtained judgments against E. W. Allen; and it is charged on information and belief that they are invalid, because (1) the services had not been completed at the time they were filed in May, 1944; (2) that they had been paid in full for their services; and (3) the services were not rendered in defense of suits for the recovery of specific property. It was alleged that, in making and filing the claims of lien, Pullen and Stone were acting in conspiracy with E. W. Allen with the actual intention of hindering, delaying, or defrauding the petitioner in the collection of her two judgments as to the amount due and also the future installments of alimony. Such allegations form a sufficient basis for equity to set aside such claims of lien.
It is contended by the plaintiffs in error that the allegations of the petition, construed most strongly against the pleader, show the total value of the East Point lot, the interest in the DeKalb County realty, and the printing machinery and equipment to be in excess of the amount of the judgments now due, in support of which contention it is pointed out that in the amendment of December 10, 1943, to the petition for divorce and alimony the value of the printing machinery and equipment is placed at $7500, which, added to the stated value of the other two properties, would in fact amount to more than the amount now due under the judgments. The value of $3500 was fixed as of the time of the filing of the present petition on June 9, 1944. This court is unable to say that the value had not decreased since December 10, 1943, and on demurrer the allegation of $3500 must be taken as *Page 561 
true. So treating it, the combined values would amount to $13,725 or less than the amount alleged to be now due under the two judgments.
It is further contended by the plaintiffs in error that the petitioner is not entitled to the relief sought in equity because she might in the manner prescribed by law have levied on the shares of stock in Peoples Loan Incorporated, for which Allen received from the sale of its assets to J. Earle Smith the sum of $30,044. It must be remembered, however, that the decree in the suit for recovery of moneys under an implied trust had been appealed from by E. W. Allen, and was not affirmed by this court until September 1, 1944, and that the decree in the suit for divorce and alimony was not entered until June 1, 1944. It is alleged that in connection with the appeal by E. W. Allen no supersedeas bond was filed. While the petitioner might, under the provisions of the Code, § 39-123, have levied on the shares of stock owned by Allen in the corporation, she also appealed from the judgment in the suit for moneys under an implied trust, and by recognizing the judgment as valid and prosecuting a fi. fa. and levy she would have waived her right to be heard on an appeal. See Grizzel v. Grizzel, 190 Ga. 219 (9 S.E.2d 247);Allen v. Allen, 198 Ga. 267 (31 S.E.2d 481). In foregoing the right to levy under such circumstances, it could not be said in equity that she has been guilty of laches. In the meantime, before June 1, 1944, the assets of Peoples Loan Incorporated had been sold and the corporation dissolved. Allen was paid $30,044 as his share in the distribution of the purchase-price, and while it is alleged that he transferred his shares of stock to J. Earle Smith, the purchaser, who was also the liquidating agent for the stockholders, even if they had not been transferred they would have had no actual value for the purpose of levy and sale. Allen having possessed himself of the $23,000 which he had on deposit with Peoples Loan Incorporated, and the $30,044 received from the liquidating agent as his share of the purchase-price of the assets of that corporation, and having, on May 9, 1944, before any final decree in favor of the petitioner, gone beyond the jurisdiction of the courts of this State, and concealed his money as alleged, the petitioner was without any adequate remedy at law at the time of filing the present action. Therefore she sought the aid of a court of equity to set aside the fraudulent *Page 562 
conveyances, and to have a receiver appointed to take charge of such assets and also under the control of the court to search out and possess himself of the assets alleged to have been concealed by E. W. Allen, and from such assets so possessed to have a sum impounded with the court sufficient to pay the sum now due under her two judgments and also future installments of alimony.
"Creditors without lien may not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity." Code, § 55-106. But even in the case of a creditor without a lien it has been held in a number of cases that special circumstances might exist rendering the general rule inapplicable. In Cohen v. Meyers,42 Ga. 46, it was held: "A bill by creditors charging that the debtor, who is insolvent, has fraudulently transferred his property, a stock of dry goods, to a third person who is in complicity with the fraud, and who is rapidly selling them at retail to other persons, and praying the appointment of a receiver, is not demurrable, on the ground that the complainants do not show that they have sued their claims to judgment at law." In Albany c. Iron Steel Co. v. Southern Agricultural Works,76 Ga. 135, 169 (3) (2 Am. St. R. 26), it was said: "Another question made and argued with much ability and force by the learned and indefatigable counsel for the respondents is, that the complainants, who are creditors without any lien, have no right to invoke the remedial aid of a court of equity until their claims are reduced to judgment; and that such was generally the rule at the time this conveyance was executed is undeniably true; but that special circumstances may exist rendering the rule inapplicable is equally true, and we find that some of those circumstances do exist in this case; such, for instance, as the insolvency of the debtor, who, it is alleged, has fraudulently transferred his property to one who is in complicity with him in the fraud, and who is rapidly disposing of the property, or where the property is obtained by fraudulent representations with which the assignee is concerned. [Citing] And when to these circumstances is added the further fact that large supplies of goods were obtained with a view of making the very assignment in question, to enable the assignee to carry on the business of the party making the assignment for an indefinite period of time, and that these goods are embraced not only in the deed of assignment, but likewise *Page 563 
in mortgages contemporaneously executed to certain of the creditors preferred by the conveyance, including the assignee himself, to aid, as charged, any defects existing therein which might render it void, and thus prevent the accomplishment of the scheme entered into by the parties, we think a strong case is made for the interposition of equity by an injunction and the appointment of a receiver, whether the complainants had reduced their demands to judgment or not." In Hermann v. Mobley,172 Ga. 380 (158 S.E. 38), it was held: "Creditors without lien can not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity. Civil Code (1910), § 5495. An exceptions to the general rule is where an insolvent debtor is fraudulently transferring his property to one in complicity with him, who is disposing of the property, or where property is obtained by fraudulent representations." For other cases dealing with exceptions to the general rule, see Elliot v. Macauley,177 Ga. 96 (2) (169 S.E. 358); Goodroe v. C. L. C. ThomasWarehouse, 185 Ga. 399 (3) (195 S.E. 199). The petitioner here, while having no special lien, did have a general lien under her two judgments. Though the judgments did not of themselves constitute a lien on choses in action of Allen for the purpose of levy and sale without more, yet because of them the petitioner could through collateral proceedings effectively fix the lien of the judgments on such choses in action. However, at the time of the filing of the present action Allen had already transferred his shares of stock in Magnolia Cemetery Incorporated, to his nonresident sister, and had also executed to her a loan deed to his half interest in the DeKalb County property, and, with the exception of the East Point lot and the printing machinery and equipment, had converted his assets into cash or its equivalent and concealed the same. He is alleged to be insolvent. While it is contended by the plaintiffs in error that the petition as amended shows him to be worth $70,000 or more, it is not shown that he has in this State assets which are in value equal to the amount due under the two judgments and which by execution and levy would produce the sum due under the two judgments of the petitioner. We think, therefore, that the petition alleges sufficient facts and circumstances rendering the general rule inapplicable, and presents a situation where upon proof a court of equity may grant the *Page 564 
prayers for setting aside the alleged fraudulent conveyance and the transfer to Mary B. Allen, as well as the alleged fraudulent claims of lien for attorney's fees, and for the appointment of a receiver to take charge of the assets of E. W. Allen and under the direction of the court to sell enough to pay the petitioner the amount now due under her two judgments. Here is presented the case of a husband seeking to place his property where it may not be reached by a judgment creditor. In so far as the petitioner is concerned, the concealment is equivalent to waste or destruction. "Equity may appoint a receiver to take possession of, and hold subject to the direction of the court, any assets charged with the payment of debts, where there is manifest danger of loss, or destruction, or material injury to those interested." Code, § 55-305; Wood v. Wood, 166 Ga. 519 (3) (143 S.E. 770);Cochran v. Cochran, 173 Ga. 856 (3) (162 S.E. 99). E. W. Allen being now within the jurisdiction of the court, equity may control him by appropriate orders as to the personal property outside of this State. "Equity may decree in cases of fraud, of trust, or of contract, although property not within the jurisdiction may be affected by the decree." Code, § 37-1204. "Equity may enjoin the defendant as to transactions beyond the limits of this State." § 55-112. See Engel v. Scheuerman,40 Ga. 206 (2 Am. R. 573). where it was held that equity would enjoin the enforcement of a judgment obtained in New York where the plaintiff had in this State sued for the same claim and obtained a judgment which had been paid off and satisfied.
The allegations of the petition that the four defendants, who are plaintiffs in error before this court, conspired with the other named defendants to forestall the petitioner in the collection of the two judgments obtained by her against the defendant E. W. Allen, various wrongful acts by some of the defendants in pursuance of the alleged conspiracy being set forth, stated a cause of action against the four defendants, and the trial court did not err in overruling their general demurrer.
2. Besides the general grounds of demurrer hereinbefore dealt with, the plaintiffs in error filed to the petition as finally amended eleven voluminous grounds. It is deemed unprofitable to further prolong the report of this case by detailing them here. It is sufficient to say that after a careful and minute examination of these additional grounds we hold that they are without merit. *Page 565 
In the opinion as first prepared by this court, and, in response to a request from counsel for the defendant in error that we point out the various relief to which the petitioner might be entitled under the allegations of the petition as finally amended, we made certain rulings in addition to those above stated. Upon consideration of a motion for rehearing filed by the defendant in error, and since under repeated rulings by this court a judgment overruling a general demurrer to the petition as a whole must be affirmed if the petition sets forth a cause of action for any of the relief prayed for (Blaylock v.Hackel, 164 Ga. 257 (5), 138 S.E. 333; Tietjen v.Meldrim, 169 Ga. 678, 151 S.E. 349; Nance v. Daniel,186 Ga. 538, 547, 189 S.E. 21; Pullen v. General AmericanCredits, 186 Ga. 642, 647, 198 S.E. 747; Robertson v.Robertson, 196 Ga. 517 (3), 26 S.E.2d 922), we have concluded that such rulings should have not been made, inasmuch as they were unnecessary to a decision based on the general demurrer to the petition as a whole and perhaps might be unauthorized. Accordingly, they have been eliminated in this opinion, which has been substituted for the one first prepared.
It might be added that while, in the consideration of a judgment pursuant to a verdict on the evidence, affirmances might be made with direction or modification (See Finleyson v.International Harvester Co., 138 Ga. 247 (3), 75 S.E. 103;Savannah Bank Trust Co., v. McQueen, 149 Ga. 302 (6),100 S.E. 33; Smithloff v. Weinman, 165 Ga. 449 (5),141 S.E. 205; Sims v. Boyd, 177 Ga. 465, 170 S.E. 375), qualified affirmances are not proper in a case where, as here, the judgment reviewed is one overruling a general demurrer to the petition as a whole. If a portion of a petition is bad in substance, though elsewhere setting forth a cause of action, the proper method of attacking the bad substance would be by demurrer to such portion. We are aware that this court in Harris v. Bandy, 182 Ga. 844
(187 S.E. 99), in reviewing a judgment overruling a general demurrer to the petition as a whole, held that a cause of action was set forth for cancellation and injunction but not for specific performance, and affirmed in part and reversed in part the judgment of the trial court. That decision, however, was concurred in by only four Justices and is not binding upon this court, and, as we believe it to be unsound and contrary to previous decisions concurred in by six Justices, it *Page 566 
is expressly disapproved and will not be followed. The attack there, as here, was made on the petition as a whole, and since this court ruled that the petition set out a cause of action for some of the relief prayed for, the judgment overruling the general demurrer should have been unqualifiedly affirmed.
Of course, where a general demurrer is sustained by the trial court the effect of such ruling is to adjudge that the petition is not good in any of its parts, since the attack requires the court to examine every portion of the petition. If it be found by this court on review of such judgment that in some part of the petition a cause of action is set forth, the proper judgment should be one of affirmance in part and reversal in part, leaving the plaintiff at liberty to pursue his action for such relief as the allegations of the petition show him entitled to.
Where a petition is generally demurred to on several grounds and the demurrer is sustained, it will be presumed that the demurrer was sustained on all of the grounds. If on review by this court it be determined that the petition was not subject to one of the grounds of demurrer, though subject to the other grounds, the judgment would not be unqualifiedly affirmed, since the ruling of the trial judge had the effect of adjudicating in favor of the demurrant all the grounds of the demurrer and a general affirmance by this court would put an end to the case. In these circumstances, the judgment would be affirmed with direction that it be modified so as not to adjudicate in favor of the demurrant the ground which this court holds to be without merit. Herring v. Smith, Ga. 825 (82 S.E. 132).
The distinctions above pointed out are not always clearly borne in mind by counsel for litigants, and it has been thought proper to present them at this time.
Judgment affirmed. Bell, C. J., Jenkins, P. J., Atkinson andWyatt, JJ., concur.