[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 19, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-14051

_____

D. C. Docket No. 02-03188-CV-CC-1

CHEPSTOW LIMITED,

                                                      Plaintiff-Appellant,

versus

MARSHALL B. HUNT,
MARTHA HUNT, et al.,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 19, 2004)

Before ANDERSON, CARNES and MARCUS, Circuit Judges.

CARNES, Circuit Judge:

Chepstow Ltd. filed a lawsuit in the district court alleging that Marshall B. Hunt had fraudulently transferred millions of dollars of his assets in order to avoid payment on a prior judgment held by Chepstow against him. The complaint alleged that Hunt, with some assistance from a Georgia company of which he was CEO, transferred a large portion of his assets to his wife, children, and a friend – all of whom are also defendants in the case – in violation of Georgia's fraudulent transfer statutes, Ga. Code Ann. § 18-2-22 (repealed July 1, 2002) and the Uniform Fraudulent Transfer Act, § 18-2-70, et seq. (effective July 1, 2002). The district court granted the defendants' motions to dismiss for failure to state a claim and entered final judgment against Chepstow. This is Chepstow's appeal.

**I.**

In a previous action filed in February 2001, Chepstow's predecessor in interest, Tapir Ltd., brought a breach of contract action in the district court against Hunt in order to collect on a past-due promissory note. During the pendency of that action – sometime between February 2001 and May 2002 – Chepstow acquired all of Tapir's rights in the action and was substituted as the plaintiff. In May 2002, the district court granted summary judgment in favor of Chepstow, and entered final judgment along with a writ of execution against Hunt in the amount of $9,281,131.02. Hunt did not appeal. Despite Chepstow's best efforts at

2

collection, its judgment against him remains unsatisfied in an amount exceeding $8 million.

In November 2002, Chepstow filed a complaint alleging that Hunt, with the knowledge and assistance of the other named defendants, engaged in numerous fraudulent transfers of his assets in order to defeat Chepstow's efforts to collect its judgment. Count 1 of the complaint alleged that Hunt had transferred assets to his wife, Martha Hunt; to his children, Marshall Blair Hunt, Jr., Calvin Hunt, Hastings Hunt, Paul Hunt, and Mary Hunt; to a Georgia limited partnership of which Hunt and his wife are general partners, Hunt Family Investments, L.L.L.P. (HFI); and to Hunt's business associate and friend William E. Peterson, all in violation of Ga. Code Ann. § 18-2-22 and the UFTA. Count 1 also alleged that Horizon Medical Products, Inc. (Horizon), a public company of which Hunt is CEO and in which he owned more than 20% of all outstanding shares, aided and abetted Hunt in making some of the fraudulent transfers. In Count 2 of the complaint, Chepstow alleged that Hunt, Martha, HFI, Peterson, and Horizon conspired to defraud Chepstow and to hinder and delay Chepstow's collection of its outstanding judgment against Hunt through the transfers.

The complaint specifically alleged that Hunt fraudulently transferred the following property: (1) all of his right, title, and interest in his home valued at $3.5

million to his wife, Martha; (2) hundreds of thousands of dollars in assets to Martha and his children; (3) 225,000 shares of his stock in Horizon to HFI; and, (4) assets in a bank account jointly held by both Hunt and Peterson to an account held solely by Peterson.

The defendants filed motions to dismiss for failure to state a claim on which relief could be granted. They asserted that Chepstow's complaint failed to state a claim under Ga. Code Ann. § 18-2-22, because that code section had been repealed without reservation by the Uniform Fraudulent Transfer Act (UFTA), Ga. Code Ann. § 18-2-70, et seq.  The defendants further asserted that Chepstow's complaint failed to state a claim based on the UFTA because the complaint did not allege any fraudulent transfers occurring after the July 1, 2002 effective date of the UFTA.

The district court issued an order dismissing Count 1 of the complaint on the ground that the enactment of the UFTA without a savings clause preserving § 18-2-22 not only repealed that provision insofar as future events were concerned, but also cut off all pending claims brought under it.  The district court ruled in the alternative that even if § 18-2-22 were not repealed by the UFTA, Chepstow had failed to state a claim against Horizon in Count 1.  The court reasoned that because Horizon was neither a debtor nor a transferee, it was not subject to liability under

4

an aider and abettor theory for claims brought pursuant to § 18-2-22, because that statute explicitly imposes liability only on debtors and transferees. The district court also dismissed Chepstow's conspiracy claims in Count 2 based on its belief that the underlying Count 1 claims alleging fraudulent conveyance failed. Having thrown out both counts against all of the defendants, the district court entered final judgment dismissing Chepstow's complaint.

## II.

We review <u>de novo</u> the district court's order granting the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. <u>Harper v. Blockbuster Entm't Corp.</u>, 139 F.3d 1385, 1387 (11th Cir. 1998). In doing so, we accept as true the factual allegations in the plaintiff's complaint and construe the facts in the light most favorable to the plaintiff as the non-moving party. <u>Spain v. Brown & Williamson Tobacco Corp.</u>, 363 F.3d 1183, 1186 (11th Cir. 2004). A motion to dismiss may be granted only when the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Harper</u>, 139 F.3d at 1387 (internal quotation and citation omitted). We review questions of statutory interpretation <u>de novo</u>. <u>United States v. DBB, Inc.</u>, 180 F.3d 1277, 1281 (11th Cir. 1999).

5

This case requires us to examine issues concerning the substantive law of Georgia. "In rendering a decision based on state substantive law, [we] must decide the case the way it appears the state's highest court would. Where the state's highest court has not spoken to an issue, [we] must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 (11th Cir. 2001) (internal quotation marks and citation omitted).

### III.

We first address the question of whether the repeal of Ga. Code Ann. § 18-2-22, which was effected through the enactment of the UFTA, retroactively extinguished all pending claims under § 18-2-22. The district court thought so, but we think not.

The Uniform Fraudulent Transfer Act (UFTA), 2002 Ga. Laws 141, § 3, as codified at §§ 18-2-70 to 18-2-80, became part of the Georgia code when the Governor signed it into law on April 4, 2002. It became effective on July 1, 2002. The UFTA repealed and replaced some of the existing Georgia fraudulent transfer provisions that had been in effect before its enactment. Importantly for this case, the UFTA repealed former § 18-2-22, which defined the conveyances by creditors

6

that are per se fraudulent. However, the UFTA left intact § 18-2-20, which provides that the rights of creditors are favored in the courts, and § 18-2-21, which provides creditors with the right to attack judgments or conveyances which interfere with their rights.

The district court reasoned that since the UFTA repealed § 18-2-22 and contained no savings clause explicitly preserving causes of action that had already arisen under the now-repealed provision, it extinguished them one and all. As authority, the district court cited Fulton Bag & Cotton Mills v. Williams, 95 S.E.2d 848 (Ga. 1956) and Gold v. Pioneer Fund, Inc., 132 S.E.2d 144 (Ga. 1963). The court cited both of those decisions for the proposition that "the repeal of a statute without reservation takes away all remedies given by it and even defeats all actions and proceedings pending under it at the time of its repeal, and this is especially so where the statute repealed is one creating a cause of action." Gold, 132 S.E.2d at 148.

The district court was correct about the UFTA repealing § 18-2-22.[1]

However, we do not agree with the district court that the repeal extinguished causes of action that had arisen under the repealed section but had not yet made it to final judgment. That is a question of state law, and there is a strong line of Georgia precedent establishing that the state constitution forbids the result the district court reached.

A.

Article I, Section 1, paragraph X of the Georgia Constitution provides that "[n]o bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed." That provision was construed and applied in Dennington v. Mayor of Town of Roberta, 61 S.E. 20 (Ga. 1908).

In Dennington, a statute enacted in 1900 required the town council of Roberta to levy a tax for the purpose of supporting the public schools, including teacher salaries, when the school board recommended that such a tax be levied. Id.

_____

[1] The UFTA, 2002 Ga. Laws 141, § 2, states that § 18-2-22, "is amended . . . by striking Code Section[] 18-2-22, relating to conveyances by debtors deemed fraudulent, . . . and inserting in lieu thereof the following: '18-2-22. [striking through all of the language in former § 18-2-22] Reserved.'" New language used in the UFTA, which is now codified in §§ 18-2-75 & 18-2-76, replaces that previously found in § 18-2-22. Also, the preamble to the UFTA included among the purposes of the Act: "to remove certain duplicate or redundant provisions relating to conveyances by debtors deemed fraudulent," and to "repeal conflicting laws." And § 4 of the UFTA states that "[a]ll laws and parts of laws in conflict with this Act are repealed."

at 21-22. The town council failed to levy the necessary ad valorem tax for the school year beginning in 1904 and ending in the summer of 1905. Id. at 21. As a result of that failure, a teacher employed by Roberta's board of school commissioners was not paid for his services because insufficient funds were available to do so. Id. In 1905, the Georgia General Assembly repealed the statute authorizing the tax levy, and the repealer act did not contain a savings clause. Id. at 21.

In a lawsuit filed by the teacher who had not been paid for his services during the 1904-05 school year, the Georgia Supreme Court held that the repeal of the taxing statute could not constitutionally be given retroactive effect to defeat the vested contractual right of the teacher. Id. at 23. In order to avoid an unconstitutional result, the Court construed the repealer legislation to apply prospectively only. Id. at 22. The absence of a savings clause was not a problem for the Court because the general rule is that repeal of a statute has no retroactive effect. Id. at 21. As the Court explained:

> There is a general statute in force in this state (Pol. Code 1895, § 6) which declares that "laws prescribe only for the future; they cannot impair the obligation of contracts nor generally have a retrospective operation," and we might well treat this Code section as the equivalent of a saving clause that a repealing act shall not be given a retrospective operation, so as to destroy vested rights or impair the obligation of contracts.

9

Id. at 21. In other words, there was a general savings clause in the Georgia code that was applicable to all enactments, which made it unnecessary for the General Assembly to include a separate savings clause in every piece of legislation. That free standing savings clause is still standing and still has the same effect. See Ga. Code Ann. § 1-3-5 (2004) (containing materially identical terms to Pol. Code 1895, § 6).

The Dennington decision has a big impact on the present case for two reasons. First, it establishes that where a right has vested through the occurrence of events giving rise to a claim under a statute, the Georgia Constitution forbids the legislature from snuffing out that right through the retroactive application of a repealer provision. Second, it establishes that a separate savings clause is not necessary in these circumstances, because of the presumption expressed in a Georgia statute of general application that a retroactive effect is not intended where vested rights are concerned.

Both of these points were reconfirmed in Bank of Norman Park v. Colquitt County, 150 S.E. 841 (Ga. 1929). Colquitt County deposited $11,000 in a bank at a time when a Georgia statute gave a county's deposits precedence for repayment over other depositors in the event the bank became insolvent. Id. at 842. Subsequent to the deposit, the statute was repealed with no indication of whether

10

the repeal was to have retroactive effect.  Id.  The bank then failed.  Id.  In a lawsuit by the county to establish priority for its claim, the Georgia Supreme Court held that the county had a vested right under the old statute, the repeal of which should not be given retroactive effect:

> The settled rule for the construction of statutes, is not to give them a retrospective operation, unless the language so imperatively requires.  Furthermore, a repealing act will not be given a retroactive operation, so as to divest previously acquired rights, or to impair the obligation of a contract lawfully made by virtue of and pending the existence of the law repealed.  Paragraph 2 of section 3 of article 1 of the Constitution of this state declares that "no . . . retroactive law . . . shall be passed."[2]

Id. (internal citation and some internal quotation omitted).

In the more recent case of Enger v. Erwin, 267 S.E.2d 25 (Ga. 1980), Enger brought suit for alienation of affections pursuant to a Georgia statute.  Id. at 25 (citing Ga. Code Ann. § 105-1203).  While his suit was pending, the General Assembly enacted the Family and Domestic Relations Law, 1979 Ga. Laws 466, which entirely superseded the statute upon which Enger's claim was based.  Id.  Not only that, but the new act abolished the cause of action for alienation of affections, and the act explicitly provided that the abolition would apply to any future proceedings in any pending cases.  Id.  Relying on that provision of the new

---

[2] The current version of this provision, which is materially identical to that cited in Norman Park, is found at Article I, Section 1, paragraph X, of the Georgia Constitution.

11

act, the defendant moved to dismiss the complaint. Id. The trial court found that retrospective application of the new statute to cut off claims brought pursuant to the previous statute was unconstitutional, and it denied the motion to dismiss. Id. The defendant filed an interlocutory appeal to the Georgia Supreme Court. Id.

The Georgia Supreme Court in Enger cited the general rule that "[l]aws usually may not have retrospective application." Id. (citing Ga. Code Ann. § 102-104 (1980), which is currently codified at Ga. Code Ann. § 1-3-5 (2004)). The Court held that when events giving rise to a substantive claim occur prior to the repeal of the statute upon which the claim is based, the plaintiff has a vested right. Id. at 26. The Court also held, as it had in the Dennington and Bank of Norman Park cases, that vested rights under a statute cannot be constitutionally extinguished through the retroactive application of a repealing statute:

> A constitutional act of the legislature has been found to be the equivalent of a contract and the rights created thereby may not be impaired by subsequent legislation. Although legislation which involves mere procedural or evidentiary changes may operate retrospectively, legislation which affects substantive rights may operate prospectively only.

Id. (internal citation omitted). Consistent with those principles, the Enger court held that Enger's "right to bring an action for alienation of affections was a substantive right which had vested at the time of the repeal of this cause of action by the General Assembly. Therefore, the portion of the [statute] which made the

12

repeal of the cause of action for alienation of affections retrospective as to pending actions [was] unconstitutional." Id. at 26; see also Brown v. Hauser, 292 S.E.2d 1, 2 (Ga. 1982) (holding, also in the context of an alienation of affections claim, that a cause of action accrues, and therefore becomes a vested right, not when a suit is filed but when the events occur that give rise to the cause of action (citing Enger, 267 S.E.2d at 25)).

Another case close to point is Mullins v. First General Insurance Company, 322 S.E.2d 265 (Ga. 1984). There was a Georgia statute authorizing the filing of Personal Injury Protection (PIP) claims in excess of the stated amount of PIP coverage in an automobile insurance policy if the insurer had failed to inform the insured of the statutory right to accept or waive that coverage. Id. at 266. The Georgia General Assembly subsequently enacted a repealing statute which eliminated claims for PIP coverage in excess of the stated amount of policies regardless of the insurer's failure to inform. Id. The repealer explicitly stated that it applied to claims based on insurance policies in effect on the date of the repeal (and therefore to failures to inform that had occurred prior to the repeal). Id. Citing Enger, the Georgia Supreme Court held that notwithstanding its explicit terms, the repealing statute could not constitutionally be applied retroactively to defeat a claim for the additional PIP benefits if the claim was based upon facts that

13

had occurred prior to the effective date of the repealing statute, even where the claim was brought after that effective date. Id. at 266-67.

From Dennington to Bank of Norman Park to Enger to Mullins, Georgia law is clear. Repealer legislation is not to be construed to impinge upon vested substantive rights, and no savings clause is necessary to put into effect the strong presumption that repeals are not intended to affect those rights. Where the General Assembly makes clear its intent to interfere with the vindication of a vested right, that intent will not be given effect, because the Georgia Constitution forbids it. We do not believe that the General Assembly made clear that it intended the repeal of the prior statutes defining creditor rights to apply retroactively, but even if it had expressed that intent, the result would be the same. Under Georgia law, if a right is substantive and it is vested, it cannot be extinguished.

The district court in this case attempted to distinguish the Enger and Braun decisions on the basis that they and any others involving common law causes of action are different. The court cited no decisions to support that theory of distinction, nor did it explicate a rationale for it. Most likely, what the court had in mind is this: When a statute that codifies a common law cause of action is repealed, the general rule in some states is that the cause of action continues to exist as it had under the common law in place before the codification. See 82

14

C.J.S. Statutes § 375 (2004) ("A common-law right which is embodied in statutory terms exists as an enforceable right exclusive of any statute declaratory of it, and such a right therefore is not abrogated by repeal of the statute." (citing Jessen v. State, 290 N.W.2d 685 (Wis. 1980))). Because the present case involves a statutory right, it is different, or so the reasoning would go.

The problems with that reasoning are several and insurmountable. First, the interests that weigh against the retroactive repeal of statutory rights are just as heavy as those that weigh against retroactive repeal of common law rights. Second, there is no hint of support in the Georgia Supreme Court decisions for any theory that vested statutory rights are entitled to less protection under the Georgia Constitution than vested common law rights. Third, Mullins involved a vested statutory right, not a common law right, so that decision stands foursquare against any notion that statutory rights are different from common law ones for these purposes.

As we said earlier, the question Georgia law poses is whether Chepstow's rights under Ga. Code Ann. § 18-2-22 and the UFTA, § 18-2-70, et seq., were vested and substantive. The answer is yes. They were vested rights, because the alleged actions of the defendants occurred prior to the July 1, 2002 effective date of the UFTA and its repealer provision. They were also substantive rights, because

15

"[s]ubstantive law is that law which creates rights, duties, and obligations." Polito v. Holland, 365 S.E.2d 273, 274 (Ga. 1988). Section 18-2-21 provided (and still does) that "[c]reditors may attack as fraudulent a judgment, conveyance, or any other arrangement interfering with their rights, either at law or in equity." Section 18-2-22, before it was repealed by the UFTA, defined the conveyances that were considered fraudulent under Georgia law. That section, when read along with § 18-2-21, gave a creditor a substantive right to overturn a conveyance included in that provision's definition of fraudulent conveyance.[3] Because Chepstow's rights under § 18-2-22 were both substantive and vested, under Georgia law they could not be extinguished by retroactively applicable legislation.

B.

The two decisions the district court cited to support its ruling on this issue – Fulton Bag and Gold – do not support it.

Fulton Bag involved the General Assembly's repeal of a statute allowing the deduction of federal income taxes for purposes of calculating state income taxes. 95 S.E.2d at 850. The repealing statute, which was enacted on December 18, 1953, provided that it was to be applied to all tax years ending on or after February 15, 1952. Id. The issue was whether that retroactive application violated the Georgia

---

[3] The defendants concede that the UFTA provisions that parallel those of § 18-2-22 confer substantive rights. Logically, it follows that those of § 18-2-22 did as well.

Constitution by impinging on vested substantive rights. Id. at 851. The Georgia

Supreme Court held that it did not, because a taxpayer has no vested right in tax

exemptions which are mere statutory privileges granted as a matter of legislative

grace. Id. This is the core of the holding in that case:

> A person has no vested right in statutory privileges or exemptions. . . .
> An exemption which exists by statute may be reduced or withdrawn
> by statute; . . . Exemption is but a statutory or constitutional shield,
> which being removed, the exposure to process is the same as if it had
> never been interposed; . . . . [A]llowances and deductions of Federal
> income taxes paid is not a right, but a privilege accorded to the
> taxpayer as a matter of legislative grace.

Id. (citations and quotation omitted).

The holding of Fulton Bag that there is no vested right, which is to say no

right that cannot be retroactively repealed, in a statutory exemption on state income

taxes is a well-established one in Georgia law. See, e.g., Gen. Motors Acceptance

Corp. v. Jackson, 542 S.E.2d 538, 541 (Ga. Ct. App. 2000) ("Whether and to what

extent deductions to a taxation plan are allowed is a matter of legislative grace . . .

."); Seaboard Coast Line R.R. Co. v. Blackmon, 199 S.E.2d 581, 583 (Ga. Ct. App.

1973) ("[W]here a provision as a matter of grace confers a benefit then there must

be strict construction against the taxpayer."); Brosnan v. Undercofler, 140 S.E.2d

517, 518-19 (Ga. Ct. App. 1965) ("Deductions . . . on which an income tax is

imposed, are allowed as a matter of legislative grace and are authorized only where

17

there is a clear statutory provision for them." (internal quotation and citation omitted)); Oxford v. Chance, 121 S.E.2d 825, 829 (Ga. Ct. App. 1961) ("[T]he allowance of a deduction or exemption in computing state income tax is a privilege granted by legislative grace.").

The present case is different from Fulton Bag and those other cases involving tax deductions, because the creation of tax deductions is an exercise of legislative grace under which no substantive rights may vest. This case involves the substantive rights of creditors under § 18-2-22, and substantive rights can vest and give rise to state constitutional rights against retroactive repeal. Thus, this case is like the Dennington, Bank of Norman Park, Enger, and Mullins cases, and it is controlled by those Georgia Supreme Court decisions. See, e.g., Spengler v. Employers Commercial Union Ins. Co., 206 S.E.2d 693, 698 (Ga. Ct. App. 1974) (distinguishing Fulton Bag on the basis that it involved non-vesting rights, and holding that the statute in Spengler, because it involved a vested right, could not constitutionally be applied retroactively to cut off vested rights).

The second decision relied upon by the district court is the Georgia Court of Appeals decision in Gold. There the appellate court rejected the plaintiff's argument that the defendant's consent to constructive service of process under a repealed procedural statute provided a basis for personal jurisdiction. Gold, 132

18

S.E.2d at 148. It was an easy decision to make, because the statute under which the plaintiff claimed the right had been repealed long before his cause of action had arisen. Id. That is obviously different from the situation we have here where the events giving rise to Chepstow's claim occurred before § 18-2-22 was repealed.

Gold can also be distinguished on an additional ground. Georgia statutes addressing procedural and remedial rights may be retroactively applied. See, e.g., Polito, 365 S.E.2d at 273 ("[W]here a statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect absent an expressed contrary intention."); Allrid v. Emory Univ., 285 S.E.2d 521, 524 (Ga. 1982) ("The legislature can constitutionally provide for the retrospective application of a remedial statute provided a time be fixed subsequent to the passage of the statute which allows citizens affected by it a reasonable time to protect their rights." (quotation and citation omitted)). The Gold case falls within that exception because it involved purely procedural rights.

Because Chepstow's rights under § 18-2-22 were substantive in nature and vested prior to the repeal of that provision, unlike the rights at issue in Fulton Bag and Gold, Chepstow's rights fall under no recognized exception to Georgia's constitutional prohibition against the retroactive elimination by statute of vested substantive rights.

19

C.

In a recent case, <u>Miller v. Lomax</u>, 596 S.E.2d 232, 238 & n.1 (Ga. Ct. App. 2004), the Georgia Court of Appeals indicated that pre-UFTA transfers could be challenged under the UFTA itself. Neither party had suggested that approach in the <u>Miller</u> case, <u>id.</u>, and the opinion offers little by way of explanation for it. The only reasoning given by the Georgia Court of Appeals for its statement that the UFTA applies, and § 18-2-22 does not, to events occurring before the effective date of the UFTA, <u>id.</u> at 238, is contained in a two-sentence-footnote, which says:

> In their briefs in the superior court, Lee Miller and the other plaintiffs specifically rely on [Ga. Code Ann.] §§ 18-2-21 and 18-2-22, but [Ga. Code Ann.] § 18-2-22, entitled, "Conveyances by debtors deemed fraudulent," was repealed effective July 1, 2002. "[I]t is the general rule that the appellate court shall apply the law as it exists at the time of its judgment, absent impairment of vested rights under the previous law." <u>Id.</u> (quoting <u>Pine Pointe Housing, L.P. v. Lowndes County Bd. of Tax Assessors</u>, 561 S.E.2d 860, 865 (Ga. Ct. App. 2002)).

<u>Id.</u> at 238 n.1. Unless there is a decision by the state supreme court on point, we follow decisions by the intermediate appellate court of the state except where there is strong indication that the state supreme court would decide the matter differently. See <u>Ernie Haire Ford, Inc.</u>, 260 F.3d at 1290.

We asked for the views of the parties in this case on the <u>Miller</u> court's statement about the UFTA's substantive provisions applying to this case, and this

is one matter about which they agree.[4]  They collectively urge that we not follow

that statement in Miller, which they characterize as dictum because the result

would have been the same in that case regardless of whether pre-UFTA law or the

UFTA's substantive provisions themselves applied.[5]  The parties are united behind

the position that Miller does not mandate the application of the UFTA's new

substantive provisions to the events in this case, all of which occurred prior to the

UFTA's effective date.  Their reasoning is the same at one level:  Miller's

suggested retroactive application of the UFTA's substantive provisions conflicts

with prior Georgia Supreme Court precedent.

The parties' reasoning about the non-application of the UFTA does differ in

the particulars.  The defendants argue that applying the UFTA to this case would

conflict with Georgia Supreme Court precedent, because the UFTA creates rights,

duties, and obligations after the fact.  The defendants are not bothered by the

---

[4] It would be more accurate to say that all of the parties in this case who have taken a position on Miller agree about it.  Horizon, a defendant who is in the case only on an aiding and abetting theory, takes no position on Miller.

[5] The defendants' position that the Miller statement about the UFTA applying is dictum is inconsistent with their position that § 18-2-22 was retroactively repealed by the UFTA.  About the statement in Miller, they say:  "This issue could have been determined without reference to whether the New Act applied or whether the former statute applied, because transfers made with such intent would have been voidable under either statute."  Their concession that the pre-UFTA fraudulent transfers in Miller were still voidable under § 18-2-22 contradicts their position that the UFTA repealed § 18-2-22.

21

prospect of pre-existing rights, duties, and obligations being abrogated by new legislation; indeed, the heart of their position is that the UFTA did just that. It is only the creation of new rights, duties, and obligations that offends them. By contrast, the plaintiff argues that applying the UFTA to this case would conflict with Georgia Supreme Court precedent because it would impair substantive rights that had vested in their favor before the statute was enacted. We agree with the parties' common position that the dictum from Miller does not control the decision of this case.[6]

## D.

For these reasons, we conclude as a matter of Georgia law that the UFTA did not retroactively repeal Ga. Code Ann. § 18-2-22, nor otherwise affect any claims based upon that statutory provision, where the underlying events occurred before the July 1, 2002 effective date of the UFTA. The district court erred in holding to the contrary and dismissing Chepstow's claims on that ground.

That leaves the aiding and abetting issue and the conspiracy issues.

---

[6] Because we conclude that the Miller footnote is not binding, we need not and do not reach the question of whether we would have reached the same result applying the UFTA as we did applying §§ 18-2-21 and 18-2-22.

## IV.

Count 1 of Chepstow's complaint alleged that defendant Horizon violated § 18-2-22 by aiding and abetting Hunt in fraudulently transferring assets to the transferee defendants. There was no allegation that Horizon itself received any of those assets – that it was a "taking party," or transferee.

The district court, in its order granting the motion to dismiss, noted that it agreed with Horizon's alternative argument that even if § 18-2-22 had not been retroactively repealed, Chepstow had failed to state a claim against Horizon for fraudulent conveyance, because "[Horizon] is neither the debtor nor the transferee (taking party) of the alleged fraudulent conveyance." In reaching that conclusion the district court relied on Kesler v. Veal, 362 S.E.2d 214 (Ga. 1987). In the Kesler case, however, the plaintiff-creditor did not allege bad faith, intent to fraud, or conspiracy on the part of the defendant transferee. The holding was that under those circumstances the transferee defendant was not liable for damages based on the fact of the conveyance alone, but instead was liable only for injunctive remedies – he could be forced to return the transferred property. Id. at 214-215. The Kesler opinion does not help decide the present case, because it says nothing about whether a non-transferee such as Horizon can be subjected to actual or

23

punitive damages for knowingly aiding and abetting a debtor to carry out a fraudulent transfer, which is what Chepstow's complaint alleges.

While conceding that § 18-2-22 mentions only fraudulent transfers by "debtors," Chepstow asserts that the Georgia courts have recognized that transferees are proper defendants under the statute. With that assertion, we agree. However, Chepstow takes the assertion one step further by contending that non-transferee aiders and abettors are liable, too. He bases that contention on a statement in Time Warner Entm't Co., L.P. v. Six Flags Over Ga., LLC, 537 S.E.2d 397, 407 (Ga. Ct. App. 2000) (internal quotation omitted), cert. granted and judgment vacated on other grounds, 534 U.S. 801, 122 S. Ct. 24 (2001), opinion reinstated in relevant part, 563 S.E.2d 178 (Ga. Ct. App. 2002), cert. denied, 538 U.S. 977, 123 S. Ct. 1783 (2003), that the Georgia courts have "explicitly acknowledged an aiding and abetting cause of action in torts involving . . . fraudulent conveyances."

That language from the Time Warner opinion is not controlling here. First, that case involved a claim of aiding and abetting in the breach of a fiduciary duty, not aiding and abetting in a fraudulent transfer, see id. at 402 n.2, which means that anything said in the opinion about fraudulent transfers is dicta. Second, the Time Warner court was quoting our opinion in Munford v. Valuation Research Corp., 98

24

F.3d 604, 613 (11th Cir. 1996), also a breach of fiduciary duty case, in which we were paraphrasing a party's argument from its brief. That brief cited the Georgia Supreme Court case of People's Loan Co. v. Allen, 34 S.E.2d 811 (Ga. 1945), which, as we discuss in the next part of this opinion, established liability for fraudulent transfer based on civil conspiracy; the Allen case did not have to do with liability for aiding and abetting.

Chepstow urges us to conclude, notwithstanding the absence of any basis in the language of § 18-2-22, that a third party who aids and abets a debtor in carrying out a fraudulent transfer is liable for it even though it is neither a debtor nor a transferee. We decline to do so. "The cardinal rule of statutory construction is to ascertain the legislative intent and purpose in enacting the law and to construe the statute to effectuate that intent," Ferguson v. Ferguson, 485 S.E.2d 475, 476 (Ga. 1997), but when statutory language "is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." City of Jesup v. Bennett, 176 S.E.2d 81, 83 (Ga. 1970).

On the face of the statute, there is no ambiguity with respect to whether §§ 18-2-20, 18-2-21 and 18-2-22, taken together, create an independent cause of action for aiding and abetting liability, because there is nothing in the language of those provisions to indicate that they do. Instead, § 18-2-22 designates certain

25

transfers of assets by debtors to taking parties (transferees) as _per se_ fraudulent under Georgia law.  More specifically, that statute states in relevant part that:  "The following acts by <u>debtors</u> shall be fraudulent in law against creditors . . . and as to them shall be null and void: . . . (2) Every conveyance of real or personal estate . . . made with intention to delay or defraud creditors, where such intention is known to the <u>taking party</u> . . . ."  Ga. Code Ann. § 18-2-22 (emphasis added).  Section 18-2-20 does say that "[t]he rights of creditors shall be favored by the courts; and every remedy and facility shall be afforded them to detect, defeat, and annul any effort to defraud them of their just rights."  Ga. Code Ann. § 18-2-20.  However, § 18-2-22 makes no mention of parties other than debtors and "taking parties" (transferees) being liable, and there is no Georgia decision that construes it to provide a claim against aiders and abettors who do not themselves receive the transferred assets. We will not put into § 18-2-22 a provision that the Georgia General Assembly left out of it and the Georgia courts have not read into it.[7]

---

[7] In <u>Freeman v. First Union National Bank</u>, 865 So. 2d 1272 (Fla. 2004), the Florida Supreme Court responded to a certified question from another panel of this Court which asked: "Under Florida law, is there a cause of action for aiding and abetting a fraudulent transfer when the alleged aider-abettor is not a transferee?" <u>Id.</u> at 1273 n.1.  Its answer is consistent with the conclusion we reach about Georgia law. The Florida Supreme Court informed us that aider and abettor claims may not be brought under the Florida Uniform Fraudulent Transfer Act (FUFTA), Fla. Stat. §§ 726.101, <u>et seq.</u>, against parties who are neither debtors nor transferees.  The Court reasoned that because the FUFTA does not refer to parties other than debtors and transferees, to allow claims to be brought against other parties would "expand the FUFTA beyond its facial application and in a manner that is outside the purpose and plain language of the statute." <u>Freeman</u>, 865 So. 2d at 1277.  The court concluded "that FUFTA was not intended to serve as a

26

For these reasons, we conclude that the district court did not err in dismissing Chepstow's claim against Horizon based upon aiding and abetting liability as a non-transferee. We will affirm that part of the district court's order dismissing Chepstow's claim against Horizon based upon that theory of liability. However, as we discuss in the next part of this opinion, Horizon may still be liable to Chepstow as a participant in the alleged conspiracy to assist Hunt in fraudulently transferring assets to the transferee defendants.

## V.

The district court dismissed Chepstow's conspiracy claim solely because it concluded that Chepstow's underlying claims alleging fraudulent conveyance failed. See Dyer v. Honea, 557 S.E.2d 20, 25 (Ga. Ct. App. 2001) ("The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage."). Because we already have concluded that Chepstow stated a valid claim pursuant to § 18-2-22 against Hunt and the transferee defendants, it follows that the district court erred in dismissing Chepstow's conspiracy claim against those defendants based on the Dyer decision. We will reverse that portion of the district court's judgment

_____

vehicle by which a creditor may bring a suit against a non-transferee party . . . for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer." Id. Of course, the Florida Supreme Court was applying Florida law instead of Georgia law, but its reasoning is persuasive.

27

dismissing those claims and remand for further consideration. However, that conclusion about the conspiracy claims against Hunt and the transferee defendants does not resolve the additional question of whether a conspiracy claim may lie against Horizon, which was neither a debtor nor a transferee.

Unlike Chepstow's claims against Horizon pursuant to § 18-2-22 based on aiding and abetting liability, its allegation that Horizon took part in a conspiracy to violate Chepstow's rights under § 18-2-22 does state a claim under Georgia law. In Peoples Loan Company v. Allen, the Georgia Supreme Court recognized that a claim alleging a conspiracy to aid and abet a debtor to forestall the collection of judgments pursuant to the fraudulent transfer statute then in effect, Ga. Code § 28-201(2) (1945), stated a valid claim against the co-conspirators.[8] 34 S.E.2d at 824 (The 1945 version of § 28-201(2) as cited in Allen is materially identical to the version of § 18-2-22(2) in effect prior to its repeal by the UFTA on July 1, 2002). Instead of basing liability on the defendants' status as transferees, the Allen Court based it on their status as co-conspirators who had assisted the debtor in defrauding the creditor. Id.

---

[8] Although the Georgia Supreme Court in Allen used the words "aid and abet" in the opinion, it was referring not to an independent claim based on aider and abettor liability, but rather was referring to a claim based on "a conspiracy . . . to aid and abet [the debtor] to forestall the [creditor] in the collection of the two judgments . . ., and accordingly any act done by one of the conspirators [is] chargeable to all of them." 34 S.E.2d at 824 (emphasis added).

28

Similarly, in Miller, 596 S.E.2d at 242, the Georgia Court of Appeals reversed a grant of summary judgment on a civil conspiracy claim where the defendant transferee had participated "in a scheme to effect fraudulent transfers" in violation of the UFTA. Although the Miller court was applying the UFTA rather than § 18-2-22, the applicable civil conspiracy liability principles are the same. Id. As the same court explained in Mustaqeem-Graydon v. SunTrust Bank, 573 S.E.2d 455 (Ga. Ct. App. 2002), "[a] conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means," id. at 461, and in order "[t]o recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." Id. (internal citation and quotation omitted).

In Allen, 34 S.E.2d at 824 (applying Ga. Code § 28-201(2)), and Miller, 596 S.E.2d at 242 (applying the UFTA), the wrong that underlay the civil conspiracy claim was a violation of Georgia's fraudulent transfer statute. Neither the Allen nor the Miller opinion places any importance on the defendants' status as debtors or transferees, but instead emphasizes their conspiring together to assist in the fraudulent transfer. We therefore conclude that Georgia law permits claims against non-transferee defendants, such as Horizon, where the allegations are, as here, that they conspired with the debtor to defraud the creditor by hindering its collections

29

of an outstanding debt in violation of § 18-2-22. We therefore will reverse the district court's judgment dismissing Chepstow's civil conspiracy claim against Horizon.

## VI.

The district court's judgment insofar as it dismissed Chepstow's fraudulent transfer claims against Hunt and the transferee defendants is REVERSED. The judgment is also REVERSED insofar it dismissed Chepstow's claims against the defendants based upon a conspiracy theory. The judgment is AFFIRMED to the extent that it dismissed Chepstow's claim against Horizon on an aider and abettor theory. The case is REMANDED for further proceedings consistent with this opinion.