[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-14366

_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**December 02, 2004**
**THOMAS K. KAHN**
**CLERK**

D.C. Docket No. 01-01201-CV-F-S

PAUL M. KIRWIN, CELL-CAL T9, JOSEPH W. CARCIONE, RICHARD
ERICKSON, GEORGE R. GORDON, STEVEN GREWAL, LINDA M. HOFF
PARTNERSHIP, STEVEN C. MEYER, RAJIVE OBEROI, JONATHAN
STEWART, KENNETH L. RAMSEY, HAROLD W. SWART,

Plaintiffs-Appellants,

versus

PRICE COMMUNICATIONS CORPORATION, PRICE COMMUNICATIONS
CELLULAR, INC., PRICE COMMUNICATIONS CELLULAR HOLDINGS,
INC., PRICE COMMUNICATIONS WIRELESS, INC., PRICE WIRELESS
HOLDINGS, INC., CELLULAR SYSTEMS OF SOUTHEAST ALABAMA,
INC., ROBERT PRICE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(December 2, 2004)**

Before DUBINA and CARNES, Circuit Judges, and MILLS[*], District Judge.

RICHARD MILLS, District Judge:

An issue of first impression in this Circuit:

Does the "intracorporate conspiracy doctrine" bar a civil conspiracy claim

under 18 U.S.C. 1962(d)?

The short answer:  no.

## I. PROCEDURAL HISTORY

Appellant Paul Kirwin and eleven other former minority shareholders of

Cellular Systems of Southeast Alabama, Inc.[1] ("Cellular Systems"), sued:

(1) Cellular Systems;

(2) Palmer Wireless Holdings, Inc. ("Palmer Wireless"), the former

majority shareholder of Cellular Systems;

(3) Price Communications Wireless, Inc. ("Price Wireless");

(4) Price Communications Cellular Holdings, Inc. ("Price Holdings");

(5) Price Communications Cellular, Inc. ("Price Cellular");

---

[*]  Honorable Richard Mills, United States District Judge of the Central District of Illinois, sitting by designation.

[1]  The eleven other plaintiffs are Cell-Cal T9 (a partnership), Joseph W. Carcione, Richard Erickson, George R. Gordon, M. Steven Grewal, Linda M. Hoff Partnership (a partnership), Steven C. Meyer, Rajive Oberoi, Jonathan Stewart, Kenneth L. Ramsey, and Harold W. Swart.

(6) Price Communications Corporation ("PCC"); and

(7) Robert Price ("Price").

The Appellants (collectively referred to as "Kirwin") alleged several state law actions against the Appellees (collectively referred to as "Cellular Systems"). Kirwin also alleged federal securities law violations, a RICO claim, misappropriation of assets, self-dealing, and fraud related to a short-form merger that eliminated his minority interest in Cellular Systems[2].

The district court found Kirwin's complaint to be defective because he did not relate allegations of fraud to particular transactions. Thus, the district court ordered Kirwin to file an amended complaint on or before June 14, 2002, or risk dismissal. Kirwin timely filed an amended complaint. Cellular Systems moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that Kirwin failed to state a claim and that he failed to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims. The district court agreed with Cellular Systems, dismissing Kirwin's federal claims and declining to exercise supplemental jurisdiction over his state law claims.

## II. FACTUAL BACKGROUND

---

[2] Kirwin based his federal claims on §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b), 78t(a)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5); Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962, 1964.

3

The district court determined the facts as follows: Palmer Wireless is a Delaware corporation that acquired a majority interest in Cellular Systems (also a Delaware corporation) by transfer from a parent company in 1995. In 1997, PCC and Price (who was CEO and treasurer of PCC) decided to acquire Palmer Wireless, which already owned 92.3% of Cellular Systems' shares. With this in mind, PCC formed Price Cellular, Price Holdings, and Price Wireless, all Delaware corporations with Price as chief executive officer (CEO). Price Wireless was a wholly-owned subsidiary of Price Holdings, which was a wholly-owned subsidiary of Price Cellular, which was a wholly-owned subsidiary of PCC.

Price Wireless acquired Palmer Wireless in a leveraged buy-out (LBO). To finance the acquisition, PCC sold approximately $191 million in assets and borrowed approximately $857 million, securing the debt with the target company's assets, including Cellular Systems' assets and the assets of Dothan Cellular, a wholly-owned subsidiary of Cellular Systems. Price became CEO of Cellular Systems and Dothan Cellular, and over the next several years Cellular Systems made low-interest loans to its parent companies.

From 1997-2001 (the "control period"), Cellular Systems held no shareholders' meetings and did not contact the minority shareholders to tell them about the low-interest loans or the liens that had been placed in connection with

4

the LBO. Furthermore, Cellular Systems did not contact the minority shareholders to tell them the purpose of the management fees paid during the control period or the basis for allocating various cost and revenue items on Cellular Systems' books.

At some point, one or more of the defendant companies offered to buy back stock from minority shareholders "in the Price Markets." In 2000, PCC, Price Cellular, Price Holdings, and Price Wireless entered into an agreement with Verizon Wireless, Inc. for the sale of Price Wireless. As part of this agreement, these defendants agreed to "use commercially reasonable efforts" to acquire any minority holdings in Price Wireless' subsidiaries, including minority shareholders in the Company.

In 2001, Palmer Wireless (still under the complete control of Price Wireless), which owned approximately 94.5% of Cellular Systems' shares, absorbed Cellular Systems in a short-form merger under Del.Code Ann. Title 8, § 253.

Afterwards, Palmer Wireless sent an eleven-page Information Statement, signed by Price as chairman of Palmer Wireless, to the minority shareholders of Cellular Systems. The Information Statement said that minority shareholders could take $7,342.30 per share or demand appraisal rights in the Delaware Court of Chancery. Furthermore, it gave the terms of the merger; explained how Palmer

5

Wireless had arrived at the $7,342.30 figure by comparable acquisition valuation methodology; briefly discussed the tax consequences of the merger; described the mechanics of the merger; and explained how a shareholder could exercise his appraisal rights under Delaware law. The Information Statement also described the upcoming acquisition of Price Wireless by Verizon, stating that Cellular Systems' shareholders were not entitled to any consideration under the terms of that acquisition and telling them how to get more information on it from the Securities Exchange Commission.

## III. STANDARD OF REVIEW

The Court reviews de novo a district court's order granting a defendant's Rule 12(b)(6) motion to dismiss. See Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004) (citation omitted). In doing so, the Court accepts as true the factual allegations in a plaintiff's complaint and construes the facts in the light most favorable to a plaintiff as the non-moving party. Id. (citation omitted). A motion to dismiss may be granted only when a defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. ,citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir.1998) (internal quotation and citation omitted)).

## IV. ANALYSIS

"The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, the doctrine states that under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." See McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1035 (11th Cir.2000) (en banc).

This Circuit has never decided whether the intracorporate conspiracy doctrine bars § 1962(d) claims[3]. The four circuits that have addressed the issue are

[3] The full of § 1962, including subsection (d), is as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

7

split on the answer. The Seventh and the Ninth Circuits have held that the intracorporate conspiracy doctrine does not bar § 1962(d) claims. See Ashland Oil, Inc. v. Arnett, 875 F.2d 1271 (7th Cir. 1989); Webster v. Omnitrition International, Inc., 79 F.3d 776, 787 (9th Cir. 1996). The Fourth and Eighth Circuits have reached the opposite conclusion. See Detrick v. Panalapina, Inc., 108 F.3d 529, 544 (4th Cir. 1997); Fogie v. THORN Americas, Inc., 190 F.3d 889 (8th Cir. 1999).

Although other circuits offer guidance on this issue, our own McAndrew decision is our primary guidepost for deciding whether § 1962(d) claims are barred by the intracorporate conspiracy doctrine. In McAndrew, the plaintiff brought a civil conspiracy claim under 42 U.S.C. § 1985(2) based on facts that also constituted a criminal conspiracy under 18 U.S.C. §§ 371 and 1512. Id. at 1034. The defendants asserted that the intracorporate conspiracy doctrine shielded them from liability. However, the Court held that "just as the intracorporate

---

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

See 18 U.S.C. § 1962.

8

conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. § 1985(2). Id.

Although Kirwin based his civil conspiracy claim on § 1962(d) rather than § 1985, the principle expressed in McAndrew is wholly applicable here. That is to say, the intracorporate conspiracy doctrine cannot be invoked to defeat a § 1962(d) claim. Corporations and their agents are distinct entities and, thus, agents may be held liable for their own conspiratorial actions. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163, 121 S.Ct. 2087, 2091, 150 L.Ed.2d 198 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.").

Accordingly, we join the Seventh and Ninth Circuits in holding that the intracorporate conspiracy doctrine does not bar § 1962(d) claims.

### III. CONCLUSION

Therefore, we **REVERSE** the district court's decision with respect to the intracorporate conspiracy doctrine. In all other regards, the district court's decision is **AFFIRMED**.